469 So.2d 1326 (1985)
Tony Randolph NOLEN
v.
STATE.
6 Div. 3.
Court of Criminal Appeals of Alabama.
January 8, 1985.
Rehearing Denied February 12, 1985.
Certiorari Denied April 26, 1985.
*1327 George W. Andrews, III, and C. Burton Dunn, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Thomas R. Allison, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-492.
TYSON, Judge.
The prior appeal of this cause involving this same incident is reported as Nolen v. State, 376 So.2d 1145 (Ala.Crim.App.), cert. denied, 376 So.2d 1148 (Ala.1979). In September, 1981, appellant challenged this conviction by petition for writ of error coram nobis and was awarded a new trial based on the mandate of Beck v. State, 396 So.2d 645 (Ala.1980).
In the first trial of this cause, appellant was convicted for the robbery and intentional killing of one Nigel Harlan. He was sentenced to life imprisonment without parole.
In the present case appellant was again convicted of the capital murder of Nigel Harlan and following a sentencing hearing was sentenced to life imprisonment without parole. This appeal follows his conviction at the retrial of the cause.
The facts of the case are set forth in the opinion of this court in Nolen v. State, supra, and are substantially the same as the evidence on the second trial from which this appeal is taken and need not be restated in detail here.

I
The appellant contends that the trial court erred in admitting into evidence the previous sworn testimony, at appellant's first trial, of three State witnesses. He argues that the State failed to establish the proper predicate for allowing the introduction of this previous testimony into evidence.
The record reveals that witnesses Donna Jacobi, Charlotte Williams and Marjorie Holloway testified during appellant's first trial. Prior to the present trial, Grover Sims, an investigator employed by the Jefferson County District Attorney's Office, was assigned to locate these witnesses. Mr. Sims testified that he telephoned Ms. Jacobi's last known place of employment in New Jersey. He discovered that she was no longer employed at this place of business. He obtained from this office her last known address and telephone number. He mailed a letter to this address, which was returned "MovedNot Forwardable". He called the telephone number he obtained from her previous employer and she no *1328 longer had that number. He further contacted directory assistance in New Jersey and they did not have a listing for Donna Jacobi. He then notified the Jefferson County District Attorney's office that Ms. Jacobi could not be located.
Kathi Eades testified that she was employed by the Jefferson County District Attorney's office. She worked with Mr. Sims in trying to locate Donna Jacobi. She testified that she telephoned Ms. Jacobi's last known place of employment and found that she no longer worked at this place of business. She obtained a telephone number and an address for Ms. Jacobi from the previous employer. She sent a letter to the address which was returned. She tried to telephone Ms. Jacobi a number of times over a two week period with no results.
Mr. Sims testified that he attempted to locate Charlotte Williams. He checked the last known address of Ms. Williams in Leeds, Alabama. Ms. Williams had moved from this address. He called her last known telephone number and a Mr. Parker answered the call. Parker did not know Ms. Williams and the number had been his for some time. Mr. Sims contacted the telephone company, the Leeds Police Department, and the Leeds Gas and Water Department with no results.
Sims testified that he was aware that at the time of the original trial Ms. Williams was a waitress at the Showboat Lounge in Birmingham. He contacted another lounge in the area and they did not know Ms. Williams. He sent a letter to her last known address which was returned stating the person had moved. He searched the telephone book and found a listing for a Charlotte Williams. He telephoned this number but the Charlotte Williams living at this address was not the missing witness.
Mr. Sims also attempted to locate one Marjorie Holloway. He sent a letter to her last known address in Homewood, Alabama. This letter was returned marked unknown. He called Ms. Holloway's last known telephone number and discovered it had been changed. He then called the new number and it had been issued to a Mr. Hill who had no knowledge of Ms. Holloway. He solicited the aid of the telephone company, but they did not have a listing for Ms. Holloway.
"In Anderson v. State, Ala.Cr.App., 362 So.2d 1296, this court stated the general rule regarding the use of former testimony, as follows:
"`Testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible.'"
Williams v. State, 375 So.2d 1257, 1269 (Ala.Crim.App.), cert. denied, 375 So.2d 1271 (Ala.1979). See also, C. Gamble, McElroy's Alabama Evidence § 245.07(1) (3rd ed. 1977).
"A sufficient predicate for a determination of unavailability is laid when the party offering the evidence shows that it exercised due diligence in seeking the presence of the witness at trial to no avail. Williams v. Calloway, 281 Ala. 249, 201 So.2d 506 (1967); Miles v. State, 366 So.2d 346 (Ala.Crim.App.1978)." Napier v. State, 377 So.2d 1135 (Ala.Crim.App.), cert. denied, 377 So.2d 1138 (Ala.1979); Anderson, supra; Williams, supra. The sufficiency of the proof of the predicate of unavailability of an absent witness is addressed to the sound discretion of the trial judge. Anderson, supra; Williams, supra; Napier, supra.
In the present case, the State adequately showed that the three witnesses *1329 were in fact unavailable for trial. Although the State may have done more to try and obtain the presence of these witnesses, they did exercise due diligence in their effort. A review of the record reveals that the testimony as admitted was not prejudicial to the appellant. All three witnesses testified to uncontroverted facts. The ruling of the trial court on this matter was not an abuse of discretion and error to reversal is not shown on this issue.

II
The appellant contends that the testimony of Donna Jacobi should have been excluded because she was not qualified as an expert witness. He specifically argues that Ms. Jacobi, a dental hygienist, was not qualified as an expert to read x-rays.
A review of the record and Ms. Jacobi's testimony reveals that she did not read any x-rays. She testified that she was employed by Dr. Gordon Hamilton, an oral surgeon. Nigel Harlan had been a patient of Dr. Hamilton's and she personally made x-rays of his teeth and mouth. She identified a set of x-rays that she had taken of Nigel Harlan's teeth.
Appellant argues that Ms. Jacobi was allowed to compare these x-rays with a chart of Mr. Harlan's teeth. The record does not support such a contention. Therefore, the admission of Jacobi's testimony in the present trial was not error.

III
The appellant contends that the trial court erred in allowing Dr. Mario Martinez to testify about his comparison of "pre-mortem x-rays", allegedly those of the victim, Nigel Harlan, and "post-mortem x-rays" made by Dr. Martinez. Appellant argues that the proper foundation was not laid to allow the admission of this testimony. It should be noted that at the conclusion of Dr. Martinez's testimony, the State sought to introduce into evidence the "pre-mortem x-rays" and the "post-mortem x-rays". Appellant objected to the introduction of this evidence on a number of grounds, one of which was that no proper chain of custody had been established for the admission of the evidence. The trial judge sustained appellant's objection. (R. 254). At the close of the State's evidence, appellant moved for judgment of acquittal, again asserting the above grounds and such motion was denied.
Dr. Martinez testified that the x-rays he used for his comparison in determining the identity of the victim were given to him by "someone" from the Birmingham Police Department a few days after September 10, 1977. These x-rays were allegedly of Nigel Harlan's teeth and mouth. He compared these x-rays with those he had taken of the unknown victim and determined that they were of the same person. He also testified that the "pre-mortem" x-rays were in the same condition at trial as they were when given to him.
The only other evidence concerning these "known" x-rays was previously given by Donna Jacobi. She testified that she took x-rays of Nigel Harlan's teeth and mouth as part of her job as a dental hygienist in New Jersey. Nigel Harlan was a patient of her employer, Dr. Gordon Hamilton. Her testimony was that the x-rays used for identification "seem to be" those of Nigel Harlan and that either she or Dr. Hamilton caused these x-rays to be sent to Birmingham, Alabama on or after September 10, 1977.
No testimony was elicited during trial from any member of the Birmingham Police Department that they received any x-rays from Dr. Hamilton or that they turned these x-rays over to Dr. Martinez.
The trial judge was correct in sustaining appellant's objection to the introduction of the x-rays into evidence.
However, without a proper chain of custody having been shown, the testimony concerning the identification of the victim by Dr. Martinez and his use of the x-rays in *1330 this identification was not properly submitted to the jury. In order to submit the x-rays or testimony concerning or relating to these x-rays, a proper chain of custody of such evidence must be established. In this cause the State failed to establish such a chain of custody. Therefore, this cause must be reversed and a new trial ordered on this basis.
The remaining issues presented for review by the appellant have been pretermitted from discussion because of the necessity of a retrial of this cause.
This cause is hereby reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.

ON REHEARING
TYSON, Judge.
The State argues that this court erred in ruling that a proper chain of custody had not been presented with reference to the victim's dental x-rays.
The State contends that the testimony concerning the x-rays was admissible since there was no specific objection advanced by appellant during this testimony or that the objections as advanced by the appellant were not based on the grounds used for reversal. The State further argues that the testimony should have been allowed, even though there was a break in the proper chain of custody because there was no evidence that anyone had tampered with the x-rays in question.
We are of the opinion that the x-rays in question were the essential key or link in the positive identification of the victim, and therefore of such serious nature that it was essential to notice and rule upon this obvious break in the chain of custody. This is true even absent a specific objection on these grounds during the testimony at issue.
No matter has been presented to change our views as first stated.
OPINION EXTENDED: APPLICATION OVERRULED.
All the Judges concur.